*Cleared by the CSO for Public Filing*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------------- x
ABU ABDUL RAUF ZALITA,                   :
                                          :
                Petitioner,               :
                                          :
          v.                            :   Civil Action No. 05 CV 1220 (RMU)
                                          :
GEORGE W. BUSH, *et al.*,                :
                                          :
                Respondents.              :
                                          :
---------------------------------------------------------------- x

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Petitioner respectfully requests that the Court enter a temporary restraining order and preliminary injunction compelling the government to comply with the Court's July 25, 2005 order in this case ("Habeas Order") (*see* dkt. no. 3). There, the Court granted Petitioner's motion for entry of a protective order and ordered the government to give Petitioner's counsel thirty days advance notice of any intent to remove Petitioner from Guantánamo (*see id.* at 3-4). The government maintains that the Habeas Order became inoperative when the Court dismissed this case. But Petitioner has filed a motion to reconsider and vacate the dismissal. Petitioner's filing of that motion renders the Court's dismissal order non-final. The government must comply with the Habeas Order pending this Court's disposition of the motion for reconsideration, and should do so pending resolution of his actions in the Court of Appeals and the Supreme Court.

This request is urgent because Petitioner's counsel is scheduled to visit Petitioner in Guantánamo on October 23, 2007.[1] Moreover, counsel wishes to send Petitioner legal mail in advance of that visit that would be subject to government inspection and censorship before

---

[1]   Declaration of J. Wells Dixon, executed October 1, 2007. (Ex. A.)

delivery to Petitioner if the Habeas Order is not in effect. Finally, absent the Habeas Order, according to the government, Petitioner might not be permitted to communicate with his counsel about his pending actions in the Court of Appeals and the Supreme Court, which relate to his efforts to avoid transfer to the custody of the Libyan government, where he would likely face persecution. Indeed, it is critically important that Petitioner communicate with his counsel about his appeals given that the government transferred another one of undersigned counsel's clients to Libya this past weekend. (Ex. B.)

Petitioner requests that the Court grant this preliminary relief pending the Court's disposition of his motion to reconsider and vacate. Petitioner also respectfully requests a stay pending appeal if Petitioner is required to seek emergency relief from the D.C. Circuit or the Supreme Court.

## BACKGROUND

On September 21, 2007, the day after this Court dismissed these cases, the government sent Petitioner's counsel an email stating its view that the dismissal order rendered the Habeas Order inoperative (*see* dkt. no. 65, Ex. B.) On September 24, 2007, Petitioner's counsel sent the government an email stating their view that the dismissal order remained non-final, and the Habeas Order therefore remained operative, pending the Court's disposition of Petitioner's motion to reconsider and vacate, and pending resolution of his actions in the Court of Appeals and the Supreme Court. (Ex. C.) In reply, the government reiterated its position that the dismissal order rendered the Habeas Order inoperative. (*Id.*) On September 27, 2007, Petitioner's counsel participated in a conference call with the government during which the government was asked to join in a call to put the matter before the Court, but the government refused. The government also refused to agree to an expedited briefing schedule for this motion.

2

## ARGUMENT

1. The Court may issue a temporary retraining order to preserve the *status quo* pending a final determination of the merits of a case. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). "[A] request for a preliminary injunction that seeks to restore the *status quo* will ordinarily be granted." 13 Moore's Federal Practice 3D § 65.20 (2004). Even when a case is on appeal and jurisdiction over the matter is vested in the Court of Appeals, a district court still has jurisdiction to issue orders preserving the *status quo*. *See* Fed. R. Civ. P. 62(c); *United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003); *Mylan Labs., Inc. v. Leavitt*, 495 F. Supp. 2d 43, 46 (D.D.C. 2007) (Urbina, J.).

Petitioner's motion for reconsideration of the Court's dismissal order suspends the finality of this Court's judgment. *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 267 (1978); *Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 206 (D.D.C. 2007) (Urbina, J.); *Amer. Fed'n of Gov't Employees v. Dist. of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 133 F. Supp. 2d 75, 83 (D.D.C. 2001) (citing cases). *See also, e.g., Miltimore Sales, Inc. v. Int'l Rectifier, Inc.*, 412 F.3d 685, 688 (6th Cir. 2005). Accordingly, while Petitioner's motion for reconsideration is pending, the procedures governing this action remain in effect.

2. Petitioner meets all four conditions for preliminary relief: He will suffer irreparable injury if the relief is denied. The public interest strongly favors a stay. Petitioner is likely to prevail on the merits. And the government will suffer no injury if the relief is granted. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001). The same factors apply in considering

3

a motion for stay pending appeal. *See Philip Morris Inc.*, 314 F.3d at 617; *Mylan Labs.*, 495 F. Supp. 2d at 46.[2]

*Injury to Petitioner.* As this Court is aware, the Habeas Order governs all attorney-client communications in this case and permits lawyer-client communications addressing the full range of matters that would be relevant to challenging the government's factual and legal basis for the confinement. Counsel and client may also communicate about, among other things, the likelihood of torture or other abuse if the client were to be repatriated to particular countries or secret overseas prisons. But the government takes the position that counsel may not visit or communicate with their clients *at all* until the D.C. Circuit has entered an order approving the DTA protective order, and the D.C. Circuit has been slow to enter such orders.[3]

In addition, Petitioner will suffer injury if his counsel is limited to visiting and communicating with him under the procedures prescribed by the DTA protective order. Those procedures are significantly more restrictive than those set forth in the Habeas Order, because the scope of relief available under the DTA is more limited than the relief available under the Habeas Order, and the D.C. Circuit, in *Bismullah*, adjudged the scope of review to be more limited as well. For example, the government takes the position that under the DTA protective

---

[2] These four factors "interrelate on a sliding scale and must be balanced against each other." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). Where the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation." *WMATC v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (citation omitted).

[3] Counsel filed a DTA petition for Petitioner on September 26, 2007, *see Zalita v. Gates*, No. 07-1384 (D.C. Cir.), and have contacted counsel for Respondent Gates to seek a stipulation to entry of the DTA protective order. However, the government has indicated in other cases, *see, e.g., Barre v. Gates*, No. 07-1302 (D.C. Cir.); *Abdulrahman v. Gates*, No. 07-1303 (D.C. Cir.), that, notwithstanding similar stipulations in those cases, access will not be permitted to those detainees until the Court of Appeals formally enters the protective order in each case, which may take weeks to obtain.

4

order, the government may (1) inspect privileged legal mail communications between counsel and Petitioner before forwarding the mail from either party to the other, and (2) redact from legal mail any information that the government believes does not refer to events leading to Petitioner's capture or Combatant Status Review Tribunal proceedings. *See Bismullah v. Gates*, Nos. 06-1197, 06-1397, 2007 WL 2067938, at *8-9 (D.C. Cir. July 30, 2007). In addition, the DTA protective order does not by its terms permit counsel to bring any papers into their client meetings absent similar pre-clearance and censorship by the government.

Petitioner would also face irreparable injury if the Habeas Order were unenforceable during the pendency of his actions in the Court of Appeals and the Supreme Court, as described more fully in Petitioner's motion for reconsideration (*see* dkt. no. 65, at 3-5). Dissolution of the Habeas Order places Petitioner in greater danger of being transferred to Libya where he plainly would face the risk of torture because counsel may have less ability to communicate with him about his pending appeals and attendant issues concerning our ongoing efforts to prevent his transfer to Libya. As noted above, this risk is even greater given the government's recent transfer of a prisoner to Libya. (Ex. B.) As this Court has noted elsewhere, "[s]uch an outcome would abuse the processes now put in place for the purpose of adjudicating matters on their merits." *See, e.g., Al-Hela v. Bush*, No. 05-cv-1048 (RMU) (D.D.C.) (dkt. no. 12, at 2).

Finally, Petitioner's counsel also represents several other prisoners at Guantánamo who have filed habeas petitions. The judges in their cases have denied or deferred the government's motions to dismiss those cases pending the Supreme Court's disposition of *Boumediene*. Accordingly, the Habeas Order remains in effect in those cases. Applying the more restrictive DTA protective order to Petitioner's case than apply in the cases of these other prisoners will further erode counsel's relationship with Petitioner.

*Public Interest.* The public has a strong public interest in "ensuring that habeas petitioners have access to counsel so that they can meaningfully challenge their detention, and the courts can adjudicate their claims." See *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 22-23 (D.D.C. 2005). The government's efforts to restrict counsel's access to and communications with Petitioner, on the other hand, serves no public interest, particularly given that the government remains bound by the Habeas Order in the scores of other cases that eleven other judges of this Court have refused to dismiss pending the Supreme Court's disposition of *Boumediene* (*see* dkt. no. 65, at 4).

*Likelihood of Success.* To justify a grant of preliminary relief, "it will ordinarily be enough" that the issues are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *WMATC*, 559 F.2d at 844. That condition is satisfied here: The Supreme Court has granted certiorari in *Boumediene*. The D.C. Circuit has recalled the mandates in those cases and in *Kiyemba*, and has deferred consideration of the government's motions to dismiss pending the Supreme Court's disposition of *Boumediene*. In addition, eleven other judges of this Court have denied or deferred consideration of the government's motion to dismiss these actions (*see* dkt. no. 65, at 4).

*Injury to the Government.* Maintaining the *status quo* would not injure the government. The government *consented* to entry of the Habeas Order in this case (*see* dkt. no. 3, at 2). Moreover, the government is currently complying, as it must, with the Habeas Order, and related orders, in the scores of other cases that other judges of this Court have refused to dismiss pending the Supreme Court's decision in *Boumediene*. As noted in Petitioner's motion for reconsideration, the D.C. Circuit has withheld consideration of the government's appeals from those orders pending the Supreme Court's disposition of *Boumediene* (*see* dkt. no. 65, at 2-3).

6

When the government is the losing party in this Court, it inevitably appeals and then insists that this Court should stay further proceedings pending guidance from the appellate courts (*see* dkt. no. 2). The government then asks the D.C. Circuit to stay the government's appeals pending that court's decision in other cases. Petitioner, by contrast, simply asks the Court to grant preliminary relief pending the Court's disposition of his motions to reconsider and vacate.

## CONCLUSION

For these reasons, the motion should be granted.

Dated: New York, New York
October 1, 2007

> Respectfully submitted,
>
> Counsel for Petitioner:
>
> /s/ Gitanjali S. Gutierrez
> Shayana Kadidal (D.D.C. Bar No. 454248)
> Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
> J. Wells Dixon (Pursuant to LCvR 83.2(g))
> CENTER FOR CONSTITUTIONAL RIGHTS
> 666 Broadway, 7th Floor
> New York, New York 10012
> Tel: (212) 614-6464
> Fax: (212) 614-6499
>
> - and -
>
> George Daly (Pursuant to LCvR 83.2(g))
> 139 Altondale Avenue
> Charlotte, North Carolina 28207
> Tel: (704) 333-5196
> NC Bar No. 1071
>
> - and -
>
> Jeffrey J. Davis (Pursuant to LCvR 83.2(g))
> 400 N. Church Street #222
> Charlotte, NC 28202
> Tel: (704) 661-5244
> Fax: (888) 350-0980
> NC Bar No. 6582

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2007, I caused the foregoing Motion for Temporary Restraining Order and Preliminary Injunction, with attached exhibits, to be filed and served on counsel listed below by causing an original and two copies to be delivered to the Court Security Office via overnight mail.

Terry M. Henry, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
Tel: (202) 514-4107
Fax: (202) 616-8470

*Counsel for Respondents*

/s/ J. Wells Dixon