IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SALEH ABDULLAH AL-OSHAN, *et al.*, | ) | |
| Petitioners, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-520 (RMU) |
| GEORGE W. BUSH, President of the United States, et al., | ) ) ) ) | |
| Respondents. | ) ) | |
| ABDULSALAM ALI ABDULRAHMAN Al HELA, *et al.*, | ) ) ) | |
| Petitioners, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-1048 (RMU) |
| GEORGE W. BUSH, President of the United States, et al., | ) ) ) ) | |
| Respondents. | ) ) | |
| SAEED MOHAMMED SALEH HATIM, *et al.*, | ) ) ) | |
| Petitioners, | ) ) ) | |
| v. | ) ) | Civil Action No. 05-1429 (RMU) |
| GEORGE W. BUSH, President of the United States, et al., | ) ) ) ) | |
| Respondents. | ) ) | |

|  |  |  |
|---|---|---|
| ABU ABDUL RAUF ZALITA, *et al.*, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-1220 (RMU) |
| GEORGE W. BUSH, President of the United States, et al., | ) ) ) ) | |
| Respondents. | ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

These cases were dismissed by decision dated September 20, 2007, and judgment order entered the following day. During the course of these proceedings, various interlocutory orders were entered. Those orders are no longer in effect now that the cases are over in this Court. Petitioners ask for temporary and preliminary relief that amounts to the re-invigoration of those orders. Their motions are predicated on the mistaken belief that their separately filed request for reconsideration of the dismissal rulings entitles them to treat those rulings as a nullity. This Court was correct in dismissing these cases and it lacks jurisdiction to grant the newly requested injunctive relief for the very same reason that it dismissed the cases. Further, the standards for preliminary relief have not been met here. The filing of petitioners' reconsideration motions does not act as an automatic stay of a dismissal order, and certainly does not reinstate the interlocutory orders to which the present motions pertain. Furthermore, petitioners have not demonstrated that the equities favor their position. For these reasons, as explained below,

petitioners' emergency motions should be denied.

## ARGUMENT

**I. Petitioners' Motion Should Be Denied Because The Court Lacks Jurisdiction To Grant The Motion.**

As a threshold matter, petitioners' motion should be denied because this Court lacks jurisdiction to grant the requested injunctive relief.

As the Court recognized in its dismissal order, the Court lacks jurisdiction over these cases. *See Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007). Although the Supreme Court granted certiorari in *Boumediene* on June 29, 2007, *see Boumediene v. Bush*, 75 U.S.L.W. 3707 (June 29, 2007), at least while *Boumediene* remains pending before the Supreme Court, the law of this Circuit remains settled: under the Military Commissions Act of 2006 ("MCA") federal district courts do not have jurisdiction over cases brought by aliens at Guantanamo Bay detained as enemy combatants, and such aliens do not have constitutional rights. Under settled rules governing the precedential effect of appellate rulings, regardless of what might happen at some point in the future in the course of the *Boumediene* litigation, this Court should act in accordance with the decision in that case. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an en banc court."), *vacated on other grounds*, 47 F.3d 1015 (1995). *See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that district court was bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective

mandate). Activity in the Supreme Court short of a reversal does not diminish the binding nature of the D.C. Circuit's *Boumediene* decision. As expressed by Judge Henderson in *Ayuda*,

> Nor is it relevant that . . . the United States Supreme Court has granted *certiorari* on the question. Unless and until [the D.C. Circuit's earlier opinion] is reversed or overruled by the United States Supreme Court or by this court *en banc*, [the earlier opinion] remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court.

*Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring).

Notwithstanding established circuit precedent, petitioners in these cases once again request that this Court exercise jurisdiction over dismissed cases for the purpose of improperly reinstating orders governing counsel access. Petitioners previously asserted this same argument in response to respondents' motion to dismiss, contending that the Court should adopt a "stay and abey" approach instead of dismissing the habeas cases. *See, e.g.*, *Al-Hela v. Bush*, 05-CV-1048 (RMU) (dkt. no. 93) at 3 ("the 'stay-and-abey' relief requested by Petitioners . . . contemplates the continued enforceability of the counsel access rules established by the protective order."); *Hatim v. Bush*, 05-CV-1429 (RMU) (dkt. no. 77) (same); *Al-Oshan v. Bush*, 05-CV-520 (RMU) (dkt no. 81) at 20 ("This Court should carefully protect the status quo by maintaining the Orders entered to date."). By dismissing these cases, the Court rejected petitioners' approach. Petitioners' desire for continued access to counsel under the regime established prior to dismissal of these cases rather than under a Court of Appeals order does not justify an improper exercise of jurisdiction by the Court. *See Oceana, Inc. v. Evans*, 389 F. Supp. 2d 4, 8 (D.D.C. 2005) (precluding a plaintiff seeking to persuade a court to amend its judgment from "rely[ing] on arguments that could have been made at an earlier stage in the proceeding, . . . for Rule 59 was not intended to allow a second bite at the apple"). Indeed, to

change course now and re-extend the counsel access regime to these cases at this time would be an assertion of jurisdiction contrary to the Court of Appeals' decision in *Boumedine* and Congress's clear command in the MCA. *See Boumediene*, 476 F.3d at 978 ("To accept [petitioners' arguments] would be to defy the will of Congress. Section 7(b) could not be clearer. It states that "the amendment made by subsection (a)"-which repeals habeas jurisdiction-applies to "all cases, without exception" relating to any aspect of detention. It is almost as if the proponents of these words were slamming their fists on the table shouting "When we say 'all,' we mean all-without exception!").

## II. Petitioners' Motion Should Be Denied In Any Event Because Petitioners Fail To Satisfy The Requirements For A Preliminary Injunction.

Even if the Court were to move beyond the jurisdictional bar to consider further petitioners' motion for a preliminary injunction, petitioners' motion should be denied.[1] It is well-established that a request for preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail in a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially

---

[1] In *Hicks v. Bush*, No. 02-CV-0299 (CKK), 2007 WL 902303 at *5 (D.D.C. Mar. 23, 2007), Judge Kollar-Kotelly denied a motion for preliminary injunction without engaging in the traditional, four-part test used to determine the propriety of such relief because "*Boumediene* holds that this Court lacks jurisdiction to even consider Petitioner's claims, such that this Court is precluded from even engaging in a balancing of the factors that would be considered on a motion for a preliminary injunction." 2007 WL 902303 at *6. *See also Zalita v. Bush*, 05-CV-1220 (RMU) (dkt. no. 51) (denying motion for preliminary injunction based on *Boumediene*).

injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). Petitioners' motion fails to make the showing required to justify the grant of extraordinary injunctive relief.

***Petitioner Has No Likelihood Of Success On The Merits.*** The proper formulation of the "likelihood of success" question for present purposes asks whether petitioners are likely to succeed on their claim that they are entitled to the continued applicability of the interlocutory orders that they want to have effectuated notwithstanding the Court's dismissal of these cases. *Cf. Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 193-194 (D.D.C. 2005) (Bates, J.) (in context of habeas case challenging detention, question concerning likelihood of success for purposes of preliminary injunction motion seeking to place condition on transfer out of detention focuses on legality of transfer and not on legality of detention). For several reasons, this Court must conclude that petitioners have failed to meet this test.

First, as discussed above, the law of the Circuit is that section 7 of the MCA clearly deprives this Court of jurisdiction. *See supra* I. Therefore, this Court's dismissal order which petitioners' are challenging was legally correct. Certainly, the Court lacks the authority to give effect to the interlocutory orders at issue on this motion. Relief should not be based on what is just a guess about what the Supreme Court might or might not do upon review of a case. And even if the appropriate question here were whether the Court of Appeals' ruling in *Boumediene* is likely to be reversed, petitioners have not convincingly shown (nor could they) that reversal is likely – and it is they who bear the burden on the present motion. *See supra*.

Second, petitioners' motions seeking reconsideration of the dismissal orders, upon which the present motions for temporary and preliminary relief are predicated, should be denied. The several reasons that the reconsideration motions lack merit are set forth in the opposition to those motions which is being filed contemporaneously with the present filing.

Third, petitioners' contention that the interlocutory orders in question are still effective is without legal basis. The applicability of the orders that petitioners would like to see remain in effect has come to an end, for the simple reason that the Court's orders establishing the counsel access regime are entirely interlocutory and therefore do not survive an order of dismissal.[2] *See Venezia v. Robinson,* 16 F.3d 209, 211 (7th Cir. 1994) (interlocutory orders do not survive dismissal of a complaint); *Chaparro-Febus v. International Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 331 n.5 (1st Cir. 1992); *Cypress Barn, Inc. v. Western Elec. Co.*, 812 F.2d 1363, 1364 (11th Cir. 1987).

Further, petitioners incorrectly contend that the mere filing of a motion for reconsideration pursuant to Federal Rule of Civil Procedure Rule 59(e) automatically stays the effectiveness of the Court's dismissal order. Although a Rule 59(e) motion suspends the finality of the judgment of dismissal for purposes of calculating deadlines under the Federal Rules, *see, e.g.*, Fed. R. App. P. 4(a)(4)(iv) (Rule 59(e) motion tolls the running of the time for filing an appeal); *International Center for Technology Assessment v. Leavitt*, 468 F. Supp. 2d 200, 205-06

---

[2] Of course, petitioners' counsel explicitly agreed, as a condition for access to such information, that the Protective Order's non-disclosure requirements would survive termination of the litigation and remain forever binding. *See* 344 F. Supp. 2d 174, ¶ 17 & Exhibit B thereto (for access to classified information, counsel required to sign Memorandum of Understanding that nondisclosure requirements survive litigation); *id.* ¶ 35 & Exhibit C thereto (for access to protected information, counsel required to sign Acknowledgment that nondisclosure requirements survive litigation).

(D.D.C. 2007) (Rule 59(e) motion tolls the running of the time for filing a Rule 60(b) motion), such a motion does not deprive a dismissal order of its effectiveness. The above-captioned cases are currently dismissed, and they must remain so unless and until the Court orders otherwise. To the extent petitioners seek relief from the effectiveness of the Court's dismissal order, they cannot simply rely on the filing of a Rule 59(e) motion. Instead, they must obtain a stay from this Court or from the Court of Appeals. *See* Fed. R. Civ. P. 62(b) (the Court may, "*[i]n its discretion*," stay the execution of the judgment pending the disposition of a Rule 59(e) motion) (emphasis added); *Mars Steel Corp. v. Continental Bank*, 880 F.2d 928, 937 (7th Cir. 1989) (en banc) ("Unless the party obtains a stay from the district court under Fed. R. Civ. P. 62(b), or from the court of appeals, an outstanding order must be obeyed, whether or not a Rule 59 motion or a notice of appeal has been filed."). Accordingly, there is no merit to petitioner's argument that the filing of a timely Rule 59 motion automatically resuscitates the habeas counsel access regime or otherwise stays the effectiveness of the Court's dismissal order.

While circumstances do exist in which applicable court rules say that filing of a reconsideration motion operates as a stay, this is not such a circumstance. Petitioners refer to some such rules that do not apply to the present situation. Thus, Supreme Court Rule 45.2 and Federal Rule of Appellate Procedure 41(d) explicitly provide for an automatic stay of a mandate upon the filing of a rehearing petition. Likewise, a stay is available upon the filing of an appeal and a supresedeas bond in a case seeking such relief as money damages. *See* Rule 62(a), (d), Fed.R.Civ.P. *See Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir.1992) ("Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money."). But while some rules provide for automatic stays, not every party has the right to avoid the effect of a

court's ruling by means of self-help. Thus, a "final or interlocutory judgment in an action for an injunction" is not stayed before or during an appeal "[u]nless otherwise ordered by the court." Fed. R. Civ. P. 62(a). Petitioners cannot point to any rule which allows them to treat their reconsideration motions as awarding a self-executing stay.

Petitioners argue, in effect, that by filing reconsideration motions they rendered this Court's order non-final in every conceivable respect. Their position would arrogate to any litigant the power to keep any interlocutory order alive by simply lodging on the docket a request to reconsider a final judgment order entered in the case in which the interlocutory order had been granted. But the proposition that a reconsideration motion has an effect of the finality of a dismissal for such purposes as computing time does not mean that it has an impact on the finality of the dismissal as far as the nullification of an interlocutory order is concerned. As the Supreme Court emphasized in one of the very cases cited by petitioners in *al Hela*, "[f]inality is variously defined; like many legal terms, its precise meaning depends on context." *Clay v. United States*, 537 U.S. 522, 527 (2003). The present context is one in which this Court has ruled, and the impact of its ruling cannot be avoided by petitioners just by asking that it be set aside.[3]

***Petitioner Has Not Demonstrated Irreparable Injury.*** Petitioners also have not carried their burden to show they face irreparable injury absent the requested injunction. With respect to the issue of counsel access, the dismissal of petitioners' habeas corpus cases does not mean that

---

[3] Petitioners also cannot rely on the All Writs Act as a basis for relief. The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). The Act, however, "'confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction . . . . [T]he Act does not enlarge that jurisdiction.'" *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). Thus, when an issue that is the subject of a request for a writ is "beyond the . . . [court's] jurisdiction to review[, it is] . . . beyond the 'aid' of the All Writs Act in reviewing it." *Clinton*, 526 U.S. at 535.

petitioners are prohibited from communicating with their counsel. To the contrary, petitioners and their counsel may maintain continued access by filing a petition pursuant to the Detainee Treatment Act of 2005 ("DTA") and obtaining entry of the protective order that the Court of Appeals has entered in scores of DTA cases.[4]

As this Court recognized in its dismissal order, "Congress has made clear that this circuit, not the district court, has exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." *See* Memorandum Order at 5 n.2. To that end, the Court of Appeals has adopted a protective order in the DTA litigation that creates a counsel access regime consistent with the scope of review established by Congress. In *Bismullah v. Gates*, 2007 WL 2067938 (D.C. Cir. July 20, 2007), *reh'g pending on other grounds*, the Court of Appeals entered a protective order after a host of issues had been litigated, and after the Court of Appeals specifically considered and rejected the district court habeas corpus protective order regime. *See id.* at *10-11; *see also Bismullah* protective order (attached as Exhibit 1). Notwithstanding this decision by the Court of Appeals, petitioners in these cases raise a variety of complaints about alleged defects in the DTA protective order, essentially asking this Court to review a decision by the Court of Appeals. As explained below, none of petitioners' complaints have merit, and they certainly do not rise to the level of irreparable injury warranting preliminary injunctive relief.

First, petitioners' contention that the Court of Appeals has been slow to enter the protective order in DTA cases is misplaced. Respondents have been stipulating to entry of the *Bismullah* protective order on an expedited basis, where circumstances warrant (*e.g.*, when

[4] There are approximately 150 DTA petitions currently pending in the Court of Appeals.

counsel have a previously-scheduled visit to Guantanamo Bay), and the Court of Appeals in many cases has entered the order promptly.[5]  *See Rabbani v. Gates*, 07-1237 (Exhibit 2) (entering *Bismullah* protective order on October 1, 2007, the same day the stipulation was filed with the Court of Appeals).

Second, petitioners' complaints about the terms of the *Bismullah* protective order are an improper attempt to relitigate issues that would be appropriate to litigate, if anywhere, before the Court of Appeals.  Although petitioners complain that the *Bismullah* protective order authorizes the privilege team to perform close content review of legal mail in order to ensure petitioner's counsel's correspondence does not include information prohibited by the terms of the protective order, that provision of the order was expressly approved by the Court of Appeals.  *See Bismullah* at *10-11.  If petitioners wish to seek relief from that ruling, the proper approach is to seek review in the Court of Appeals or Supreme Court, not to resurrect their district court habeas cases.

Third, the DTA counsel access regime does not prevent petitioners' counsel from bringing papers into their client meetings.  Although the Court of Appeals in the *Bismullah* protective order declined to adopt provisions governing in-person visits at Guantanamo Bay into a court order, the Department of Defense has adopted extensive procedures for counsel visits in

---

[5] Petitioners Hatim and Al-Hela filed DTA cases in June 2007.  *See Mohammad v. Gates*, 07-1191 (D.C. Cir.).  Petitioner Zalita filed a DTA petition on September 26, 2007.  *See Zalita v. Gates*, 07-1384 (D.C. Cir.).  Thus, a stipulation can be filed in these cases in relatively short order.  Although the petitioners in *Al-Oshan* have not filed DTA cases, a DTA petition should not be difficult to file, as it can be merely a short document that contains the names of the petitioner and respondent(s) and identifies the determination for which review is sought.  *See* FED. R. APP. P. 15(a)(2); FED. R. APP. P. Appendix, Form 3.  Indeed, the DTA petition is simply a case-initiating document; the merits of such a case are addressed in the parties' later-filed merits briefs.

DTA cases. *See* Guantanamo Procedure Guide For Counsel Access In Detainee Treatment Act Cases (attached as Exhibit 3). These procedures include a host of regulations governing such things as counsel's ability to bring documents into their meetings and to request visits to Guantanamo Bay. Consequently, the DTA counsel access regime provides petitioners with an appropriate means of communicating with the counsel, and petitioners will not suffer irreparable harm by complying with the protective order adopted by Court of Appeals.

Furthermore, it is neither necessary nor appropriate that the Court reinstate orders that prohibit respondents from transferring petitioners from Guantanamo Bay to another country without thirty days' advance notice to the Court and counsel. As respondents have demonstrated in numerous filings in this Court, in any transfer of a Guantanamo detainee, a key concern is whether the receiving government will treat the detainee humanely and in a manner consistent with its international obligations; specifically, it is the policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured.[6] *See* Declarations of Ambassador Clint Williamson and Principal Deputy Assistant Secretary of Defense for Global Security Affairs Joseph Benkert (attached as Exhibits 5 & 6).[7]

---

[6] In addition, the Court is without jurisdiction in this matter and, specifically, with respect to issues relating to detainee transfers. As recognized in *Boumediene*, Section 7 of the MCA eliminates jurisdiction not only over habeas actions, but also over all cases "'which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001.'" *See* 476 F.3d at 986-87. Indeed, the Court of Appeals effectuated its ruling that the MCA expressly bars claims relating to any transfer of a petitioner when it denied a motion for advance notice of transfer in a DTA case for lack of jurisdiction. *See Hamlily v. Gates*, 07-1127 (D.C. Cir) (attached as Exhibit 4).

[7] The attached declarations of Ambassador Williamson and Secretary Benkert are more up-to-date declarations addressing the policies and practices discussed in the declarations previously submitted by Ambassador Pierre-Richard Prosper and Deputy Assistant Secretary

**CONCLUSION**

For the foregoing reasons, Respondents respectfully request that the Court deny petitioners' motion for temporary restraining order and preliminary injunction. A proposed order is attached.

Dated: October 4, 2007                    Respectfully submitted,

                                                  PETER D. KEISLER
                                                  Assistant Attorney General

                                                  DOUGLAS N. LETTER
                                                  Terrorism Litigation Counsel

                                                  */s/ Andrew I. Warden*
                                                  JOSEPH H. HUNT (D.C. Bar No. 431134)
                                                  VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                  JUDRY L. SUBAR (D.C. Bar 347518)
                                                  TERRY M. HENRY
                                                  JAMES J. SCHWARTZ
                                                  JEAN LIN
                                                  ROBERT J. KATERBERG
                                                  ANDREW I. WARDEN (IN Bar No. 23840-49)
                                                  NICHOLAS A. OLDHAM
                                                  JAMES C. LUH
                                                  Attorneys
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  20 Massachusetts Ave., N.W.
                                                  Washington, DC  20530
                                                  (202) 514-2000

---

Matthew C. Waxman. *See, e.g.*, *Hatim v. Bush*, 05-CV-1429 (RMU) (dkt. no. 13). In all respects relevant to the present matter, the new declarations describe the same policies and practices as those described in the Prosper and Waxman declarations.