Cleared for public filing
by the CSO, 10/29/2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------- x
                                         :
ABU ABDUL RAUF ZALITA                    :
                                         :
                    Petitioner,          :
                                         :
         v.                              :   Civil Action No. 05-cv-1220 (RMU)
                                         :
GEORGE W. BUSH *et al.*,                 :
                                         :
                    Respondents.         :
                                         :
---------------------------------------- x

**MOTION FOR PRELIMINARY INJUNCTION AGAINST TRANSFER
PURSUANT TO THE ALL WRITS ACT, 28 U.S.C. § 1651**

Pursuant to the All Writs Act, 28 U.S.C. § 1651, Petitioner Abu Abdul Rauf Zalita, a.k.a. Abdul Ra'ouf Ammar Mohammad Abu Al Qassim ("Petitioner"), respectfully requests the Court to supplement its Order of October 5, 2007 [dkt. 72] ("October 5, 2007 Order") (granting rehearing of the above-captioned case and reinstating the counsel access orders previously in effect) by enjoining any future transfer of Petitioner to Libyan custody or the custody of any other country without the consent of Petitioner and his counsel during the pendency of the current stay and until final disposition of the case.[1]

On October 5, 2007, this Court vacated the dismissal of Petitioner's case and stayed the case pending determination by the Supreme Court of the rights of individuals detained at the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). So that this case may be resolved upon the merits of its jurisdictional and substantive claims, the October 5, 2007 Order reinstates

---

[1] Pursuant to LCvR 7(m), Petitioner's counsel consulted with counsel for Respondents about this motion on October 24, 2007. Respondents declined to consent to the motion.

the protective order and counsel access rules that will enable Petitioner to pursue both his claim in this Court and his petition for certiorari in the Supreme Court.

However, the Order as issued is insufficient to preserve this Court's jurisdiction, despite its intention to do so. Respondents have repeatedly indicated their intent to repatriate Petitioner to Libya, where he has a credible fear that he will face torture and persecution at the hands of Colonel Muammar Qadhafi's regime.[2] Because any transfer to Libya would expose Petitioner to a "substantial risk of torture" and threaten to "prematurely moot the case or undo this court's jurisdiction," *Omar v. Harvey*, 416 F. Supp. 2d 19, 25 (D.D.C. 2006) (Urbina, J.), this Court should enter an injunction to preserve the status quo by prohibiting Petitioner's transfer until a final resolution of his claims on the merits.

## Argument

**I.    The All Writs Act Empowers the Court to Preserve the Status Quo**

This Court may temporarily enjoin action by the Government that would threaten the Court's ability to hear and fully resolve Petitioner's claims. That power flows from several sources. First, every federal Court has the power to determine its own jurisdiction. *See Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), *United States v. Ruiz*, 536 U.S. 622, 694 (2002). As noted in this Court's October 5, 2007 Order, the outcome of *Boumediene v. Bush*, *cert. granted*, 127 S. Ct. 3078 (2007) ("*Boumediene*"), will inform the exercise of that power in this case. Second, the All Writs Act, 28 U.S.C. § 1651, expressly allows the Court to "issue all writs necessary or appropriate in aid of [its] jurisdiction," including the temporary injunction sought here. This Court invoked that power in enjoining the transfer of an American citizen to the custody of Iraqi

---

[2] On February 20, 2007, the Government gave notice of its intent to transfer Petitioner upon the expiration of the 60-day notice period then in effect by order of this Court. *See* Respondents' Notice Pursuant to the Court's February 15, 2007 Minute Order (Feb. 20, 2007) and Minute Order (Feb. 15, 2007). The notice period expired on April 21, 2007; Respondents have asserted the authority to transfer Petitioner at any time.

officials in *Omar v. Harvey*, 416 F. Supp. 2d 19 (D.D.C. 2006), *aff'd*, 479 F.3d 1, 15 (D.C. Cir. Feb. 9, 2007). In an order unsealed last week in the case of *Alhami v. Bush*, No. 05-cv-359, slip op. at 6 (D.D.C. Oct. 2, 2007) (attached hereto as Ex. A),[3] Judge Kessler granted precisely the same type of relief sought here, namely, a preliminary injunction preventing the rendition of a Guantánamo detainee to a country where he is more likely than not to be tortured or persecuted.

## II. Petitioner Satisfies the Requirements for Injunctive Action by the Court.

### A. Petitioner Raises Substantial and Difficult Legal Questions.

To invoke the All Writs Act, the moving party need not be "more likely than not" to prevail on the merits, but must present questions "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (internal quotation omitted). The substantial issues raised in this case warrant the modest court action requested here.

Both the Supreme Court and the Court of Appeals have signaled the importance of the issues to be resolved in *Boumediene* – issues that Petitioner's case shares. The Supreme Court took the very rare step of reversing its prior decision in the case and granting certiorari on rehearing. *See Boumediene*, 127 S. Ct. 3078, *vacating* 127 S. Ct. 1478 (2007). The grant of certiorari on rehearing requires the votes of five Justices, rather than the usual four, to recognize the case as presenting important, unresolved questions of federal law. *See* Sup. Ct. R. 10, 44.1. Even while initially voting to deny certiorari, two Justices pointed out the "obvious importance of the issues raised [in *Boumediene*]." 127 S. Ct. at 1479 (Statement of Stevens and Kennedy, JJ.). The subsequent grant of certiorari in *Boumediene* resoundingly affirms the difficulty and seriousness of the questions presented. The Court of Appeals also recognized the substantial

---

[3] Judge Kessler's opinion was unsealed on October 9, 2007. *See* Order, [dkt. 61] No. 05-cv-359 (Oct. 9, 2007).

jurisdictional questions raised in these cases and withdrew its mandate in a number of appeals it had dismissed prior to the Supreme Court's grant of certiorari in *Boumediene*.[4]

The Supreme Court has recognized that even when, as in the present case, the ultimate jurisdiction is the substantial question at issue, the All Writs Act allows federal courts to "preserve the court's jurisdiction or maintain the *status quo* by injunction pending review." *Arrow Transp. Co. v. Southern R. Co.*, 372 U.S. 658, 671 n.22 (1963); *see also Chandler v. Judicial Council of Tenth Circuit*, 398 U.S. 74, 112 (1970) (Harlan, J., concurring) ("Court may issue [the extraordinary] writ [pursuant to All Writs Act] when the lower court's action might defeat or frustrate this Court's *eventual* jurisdiction.").

Finally, Petitioner's own petition for certiorari presents unresolved legal issues that are similarly complex and substantial, namely, whether the Guantánamo detainees hold any rights directly under the Fifth Amendment to the Constitution and international treaties and, if so, whether they can be entirely deprived of a forum for enforcing those rights. *See* Petition for Writ of Certiorari, *Abu Abdul Rauf Zalita v. Bush, et al.*, No. 07-416 (filed Sept. 21, 2007). A finding in *Boumediene* that the Suspension Clause does not afford Guantánamo detainees the right to habeas review, therefore, would not be dispositive of this case. The novel issues presented in Petitioner's own case provide an additional basis for this court to preserve his access to the court by prohibiting his transfer to Libya.

### B.   The Balance of Harms Overwhelmingly Favors Petitioner.

The substantive heart of Petitioner's claim is that he should be allowed to challenge action by the United States that will result in his transfer to a country where he is more likely than not to face torture or persecution. Absent the requested relief, he may be transferred

---

[4] *See, e.g.*, Order Granting Motion to Recall Mandate, *Boumediene v. Bush*, Nos. 05-5062 & 05-5063 (D.C. Cir. Jul. 26, 2007); Order Staying Issuance of Mandate, *Paracha v. Bush*, No. 05-5194 (D.C. Cir. Sep. 7, 2007).

tomorrow to face the quintessential irreparable injury – the risk of torture and death. This risk of irreparable injury vastly outweighs the negligible harm, if any, to the United States that would be created by an injunction barring Petitioner's transfer to Libya. Petitioner has been held at Guantánamo for over five years. He is only one of over 300 individuals presently incarcerated at the base.[5] Petitioner's continued presence there would not cause the Government the slightest harm. *Cf. Alhami*, slip op. at 7-8 ("[T]he Government suffers absolutely no harm from entry of the Preliminary Injunction, whereas the failure to grant [the detainee] the interim relief he seeks – relief necessary to ensure his survival until the Supreme Court rules – would be irremediable if *Boumediene* is reversed.").

Public policy, as expressed in the All Writs Act, favors preserving the status quo pending resolution of Petitioner's case. The text of the Act – "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions" – plainly favors preservation of jurisdiction, including the jurisdiction to rehear the parties' jurisdictional arguments (if that should be necessary in light of the outcome in *Boumediene*) and the resolution of all claims upon full hearing by the Court. *See Omar*, 416 F. Supp. 2d at 29-30 ("[I]t is in the public's interest to have a judiciary that does not shirk its obligations . . . particularly where the Great Writ is concerned."). Temporarily prohibiting Petitioner's transfer to the custody of the Libyan government during the pendency of this case serves precisely that policy. It would ensure that the Court's jurisdiction is not undermined by the very same Executive action it is asked to examine.[6]

---

[5] U.S. Dep't of Defense, News Release, *Detainee Transfer Announced*, Sept. 29, 2007, *available at* http://www.defenselink.mil/Releases/Release.aspx?releaseID=11368.

[6] The statements of Justices Stevens and Kennedy in the initial denial of certiorari in the *Boumediene* case expressed markedly similar concerns. The Justices wrote, regarding maintenance of the *status quo* during the litigation and while the petitioners worked to exhaust their DTA proceedings: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas

**III.     The Requested Injunction Is Within This Court's Sound Exercise of Discretion.**

The All Writs Act provides ample legal basis for the modification of the Court's October 5, 2007 Order to include a stay prohibiting transfer of Petitioner to Libya. This Court has invoked the Act in both *Omar* and *Alhami* to preserve its jurisdiction pending resolution of merits claims. *See Omar*, 416 F. Supp. 2d at 25; *Alhami*, slip op. at 6. Such an injunction here would be well within this Court's sound exercise of discretion. *See Omar*, 416 F. Supp. 2d at 25-26 ("[A]ny physical transfer of the petitioner may prematurely moot the case or undo this court's jurisdiction. *See* 28 U.S.C. § 1651. Divesting the court of jurisdiction, either as a matter of law or *de facto*, would abuse the process now put in place for the purpose of adjudicating matters on their merits."); *Alhami*, slip op. at 6-7 ("Our Court of Appeals has already declined to vacate decisions of this District Court granting such interim relief. *See Al Ginco v. Bush*, No. 06-5191, slip op. at 2 (D.C. Cir. June 7, 2007).").

The Court is well aware, based on the parties' prior pleadings, that if Respondents transfer Petitioner to Libyan custody he is more likely than not to face torture or persecution. The appeal in this case asks whether he has the right to challenge and possibly enjoin such a transfer. While this question remains unanswered, an order prohibiting that transfer issued in service of this Court's jurisdiction would merely ensure that he may subsequently enjoy any right to judicial protection that the outcome of his appeal may establish. *See Omar v. Harvey*, 479 F.3d 1, 15 (D.C. Cir. Feb. 9, 2007) ("[B]ecause the district court's preliminary injunction properly preserves its jurisdiction to entertain [Omar's] petition, we affirm.")

---

corpus are not compromised.'" *Boumediene*, 127 S. Ct. at 1479 (Statement of Stevens and Kennedy, JJ.). The Respondents' intent to immediately transfer Petitioner presents precisely the situation noted by Justices Stevens and Kennedy.

**Conclusion**

For the forgoing reasons, the Court should grant this motion and supplement its October 5, 2007 Order to enjoin any transfer of Petitioner from United States to Libyan custody, pending the final resolution of his case or, at a minimum, during the pendency of his case before this Court.

Dated:  New York, New York
　　　　October 26, 2007

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Counsel for Petitioner:


　　　　　　　　　　　　　　　　　　　　/s/ Gitanjali S. Gutierrez
　　　　　　　　　　　　　　　　　　　　Shayana Kadidal [D.C. Bar No. 454248]
　　　　　　　　　　　　　　　　　　　　Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
　　　　　　　　　　　　　　　　　　　　J. Wells Dixon (Pursuant to LCvR 83.2(g))
　　　　　　　　　　　　　　　　　　　　Amy Cara Brosnan (law graduate)
　　　　　　　　　　　　　　　　　　　　CENTER FOR CONSTITUTIONAL RIGHTS
　　　　　　　　　　　　　　　　　　　　666 Broadway, 7th Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10012
　　　　　　　　　　　　　　　　　　　　Tel: (212) 614-6438
　　　　　　　　　　　　　　　　　　　　Fax: (212) 614-6499

　　　　　　　　　　　　　　　　　　　　George Daly (Pursuant to LCvR 83.2(g))
　　　　　　　　　　　　　　　　　　　　139 Altondale Avenue
　　　　　　　　　　　　　　　　　　　　Charlotte, North Carolina 28207
　　　　　　　　　　　　　　　　　　　　Tel: (704) 333-5196
　　　　　　　　　　　　　　　　　　　　NC Bar No. 1071

　　　　　　　　　　　　　　　　　　　　Jeffrey J. Davis (Pursuant to LCvR 83.2(g))
　　　　　　　　　　　　　　　　　　　　400 North Church Street #222
　　　　　　　　　　　　　　　　　　　　Charlotte, North Carolina 28202
　　　　　　　　　　　　　　　　　　　　Tel: (704) 661-5244
　　　　　　　　　　　　　　　　　　　　Fax: (888) 350-0980
　　　　　　　　　　　　　　　　　　　　NC Bar No. 6582

## CERTIFICATE OF SERVICE

      I hereby certify that on October 26, 2007, I caused the foregoing Motion for Preliminary Injunction Against Transfer, with attached exhibit, to be filed and served on counsel listed below by causing an original and two copies to be delivered to the Court Security Office via overnight mail.

Terry M. Henry, Esq.
U.S. Department of Justice
Civil Division
P.O. Box 883
20 Massachusetts Avenue, NW
Suite 7144
Washington, DC 20044
Tel: (202) 514-4107
Fax: (202) 616-8470

*Counsel for Respondents*

                                    /s/ Gitanjali S. Gutierrez
                                    Gitanjali S. Gutierrez

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

───────────────────────────────── x
:
ABU ABDUL RAUF ZALITA           :
:
Petitioner,   :
:
v.           :  Civil Action No. 05 CV 1220 (RMU)
:
GEORGE W. BUSH *et al.*,         :
:
Respondent.   :
:
───────────────────────────────── x

### [PROPOSED] ORDER ON PETITIONER'S
### MOTION FOR PRELIMINARY INJUNCTION AGAINST TRANSFER

Petitioner's motion for a preliminary injunction against transfer is hereby GRANTED. Respondents are enjoined from transferring Petitioner from the U.S. Naval Station at Guantánamo Bay, Cuba to the custody of the Libyan government or any other country for the duration of the Court's stay of his case and until final disposition of his rights.

SO ORDERED, this _____ day of _____, 2007.


_____
Ricardo M. Urbina
United States District Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAFIQ BIN BASHIR BIN JALLUL       :
ALHAMI et al.,                    :
                                  :
        Petitioners,              :
                                  :
    v.                            :    Civil Action No. 05-359 (GK)
                                  :         (UNDER SEAL)
GEORGE W. BUSH, et al.,           :
                                  :         **FILED**
        Respondents.              :
                                  :         OCT - 2 2007

### MEMORANDUM ORDER

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

This matter is before the Court on Petitioner Mohammed Rahman's Motion for Preliminary Injunction Pursuant to FRCP 56(a).[1] Upon consideration of the Motion, Opposition, Respondents' Supplemental Statement, Petitioner's Brief on Jurisdiction, Respondents' Opposition, Petitioner's Reply, and the entire record herein, and for the reasons stated below, Petitioner's Motion for Preliminary Injunction is **granted**.

Petitioner Rahman ("Rahman") is a Tunisian citizen allegedly captured by Pakistani bounty hunters and transferred to the custody of the United States on an undisclosed date. He has been detained in Guantanamo Bay since shortly after his capture. Rahman maintains that Combatant Status Review Tribunal ("CSRT") proceedings have never resulted in any finding that he is an

---

[1] Petitioner's Motion also requested a temporary restraining order. The Court previously granted that portion of the Motion.

(N)                                                                58

"unlawful" enemy combatant.[2] On May 15, 2007, the Government provided notice to Petitioners and the Court of its intention to transfer Rahman out of Guantanamo Bay and release him to the Government of Tunisia.

A 20-year prison sentence awaits Rahman in Tunisia. The Tunisian Government promulgated the Tunisian Patriot Act in 2003,[3] nearly two years after Rahman was captured and detained by the United States. Rahman was prosecuted, in absentia, in Tunisia in 2005 for violations of the newly-enacted Tunisian Patriot Act, and was convicted and sentenced to 20 years' imprisonment. Rahman's ex poste facto prosecution and conviction, he contends, offend the norms of the United States Constitution as well as international law. He further maintains that the Tunisian Government passed the Tunisian Patriot Act at the behest of the United States Government, and that his prosecution pursuant to that Act was based solely on the very evidence which led to his detention in Guantanamo, but was deemed insufficient to hold him as an unlawful enemy combatant. The fact that he has been cleared by the United States Government

---

[2] The Government points out that a CSRT proceeding resulted in a finding that Rahman was an enemy combatant, although it does not expressly dispute Rahman's statement that the CSRT never found him to be an "unlawful" enemy combatant.

[3] The Tunisian Patriot Act is alleged to be similar to the USA Patriot Act of 2001. See Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act"), Pub. L. No. 107-56, 115 Stat. 272 (codified as amended in scattered sections of 18 U.S.C.).

-2-

raises serious doubts about his Tunisian conviction. Moreover, he contends that the United States Government knew of his prosecution in Tunisia and did nothing to inform him, thereby ensuring that he would be deprived of any opportunity to defend himself.

Rahman suffers from serious health problems. His aortic heart valve was replaced when he lived in Italy, and he has an intracardiac pacemaker and a stent. He experiences frequent chest pains and intense heart palpitations. His kidney problems, urinary problem, and joint problems cause him severe pain. Rahman also suffers from chorea, rheumatic fever, uncompensated congestive heart failure, hypertension, anxiety, depression and fatigue. In light of those health problems, Rahman argues that transfer to Tunisia, which will result in his imprisonment, amounts to a death sentence because he will not receive adequate treatment. Tunisian prisons have been cited by the United Nations High Commission on Human Rights as having "inhuman living conditions."

Rahman has presented evidence that he would face a serious threat of torture if rendered to a Tunisian prison. He cites to reports of international organizations that document torture of prisoners and police brutality in Tunisia. Rahman's serious health problems, his Tunisian ex poste facto conviction in absentia, and his allegations of the indiscriminate use of torture in Tunisian prisons demonstrate the devastating and irreparable harm he is likely to face if transferred.

On June 29, 2007, the Supreme Court granted certiorari to review the merits of our Court of Appeals' decision in <u>Boumediene v. Bush</u>, 476 F.3d 981 (D.C. Cir. 2007) ("<u>Boumediene</u>"). <u>Boumediene v. Bush</u>, 127 S. Ct. 3078, 2007 WL 1854132 (2007); <u>Al Odah v. United States</u>, 127 S. Ct. 3067, 2007 WL 681992 (2007). The petitions for certiorari challenge, <u>inter alia</u>, the Court of Appeals' decision that aliens captured or detained by the United States outside of the United States do not have a constitutional or common law right to challenge their detentions via habeas corpus petitions. <u>See</u> Petition for a Writ of Certiorari at i, <u>Al Odah v. United States</u> (No. 06-1196)). The resolution of that question is likely to directly affect the outcome of the instant case.

The Supreme Court's decision to grant certiorari in <u>Boumediene</u> constituted a reversal of its previous denial of certiorari. Such reversals are rare. To grant certiorari on rehearing requires the votes of five justices, not just the four required to grant certiorari on an initial application. <u>See</u> Sup. Ct. R. 44.1. Although the agreement of five justices on certiorari certainly does not predict the outcome on the merits, it does demonstrate the Supreme Court's recognition of the importance of the case. <u>Boumediene v. Bush</u>, 127 S. Ct. 1478 (2007). Rule 10 of the Supreme Court Rules provides for a grant of certiorari where "an important question of federal law that has not been, but should be, settled by th[e Supreme] Court, or has decided an important federal

-4-

question in a way that conflicts with relevant decisions of th[e Supreme] Court."[4] The extraordinary grant of certiorari on rehearing indicates the Supreme Court's view that this case raises an important federal question, and that there is a need for comprehensive and thorough reexamination of the Court of Appeals' decision.

The Government responds that despite the Supreme Court's grant of certiorari, the Court of Appeals' decision in <u>Boumediene</u> controls until the Supreme Court has ruled. However, the Court of Appeals' decision, on July 27, 2007, to affirmatively withdraw the mandate in <u>Boumediene</u> suggests, at a minimum, the Court of Appeals' inclination to await the Supreme Court's final ruling.

In addition, it is well-settled that an appellate decision is not final until the mandate is issued. Fed. R. App. P. 41(c) advisory committee's note, 1998 amendment ("A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed."). Absent a mandate, whether because it has not yet issued or because it has been withdrawn, the court of appeals retains jurisdiction and the decision may be modified or rescinded. See <u>Deering Milliken, Inc. v. FTC</u>, 647 F.2d 1124, 1129 (D.C. Cir. 1978). Recalling the mandate sends a strong signal that the decision may well be

---

[4] The two other Rule 10 considerations are not applicable to this case.

modified or rescinded, and deprives a previously final decision of its finality. See Calderon v. Thompson, 523 U.S. 550, 557-58 (1998).

When these two factors--the Supreme Court's highly unusual grant of certiorari on rehearing and the Court of Appeals' withdrawal of the mandate in Boumediene--are considered together, they cast a deep shadow of uncertainty over the jurisdictional ruling of that decision. Given this procedural posture, and the dire irreparable harm Rahman fears, it is imperative that the Court protect its jurisdiction until the Supreme Court issues a definitive ruling in Boumediene.

It is well-settled that this Court has jurisdiction to determine its own habeas jurisdiction. See Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006); Rasul v. Bush, 542 U.S. 466 (2004); United States v. Ruiz, 536 U.S. 622, 627 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction."). The Court also has the related power, pursuant to the All Writs Act, 28 U.S.C. § 1651, to "issue all writs necessary or appropriate in aid of [its] jurisdiction . . . ." See also United States v. United Mine Workers, 330 U.S. 258, 290 (1947) ("[T]he District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction."). Our Court of Appeals has already declined to vacate decisions of this District Court granting such interim

relief. See Al Ginco v. Bush, No. 06-5191, slip op. at 2 (D.C. Cir. June 7, 2007). That consolidated appeal considered the decision of a judge of this District Court to issue a 30-day notice order in order to protect the court's jurisdiction. Significantly, our Court of Appeals considered the validity of that 30-day notice order after issuance of its decision in Boumediene, and it declined to vacate the District Court ruling. See id. It may be inferred from that ruling that the Court has the power to grant the injunction requested in this case to preserve the status quo pending the Supreme Court's decision in Boumediene.

In view of the grave harm Rahman has alleged he will face if transferred, it would be a profound miscarriage of justice if this Court denied the Motion based on the Court of Appeals' decision in Boumediene and the Supreme Court later reversed or modified that decision. At that point, the damage would have been done. As then-Chief Judge Wald observed regarding an appeal of a district court injunction, a justice system that did not allow courts to "provide interim relief to ensure the survival in the coming months of the alien claimants in this case" pending the Supreme Court's decision in a separate controlling case would be "a cruel and irrational system of justice indeed." Ayuda v. Thornburgh, 919 F.3d 153, 154, 156 (D.C. Cir. 1990) (Wald, C.J., dissenting).

Finally, the Government suffers absolutely no harm from entry of the Preliminary Injunction, whereas the failure to grant Rahman

the interim relief he seeks--relief necessary to ensure his survival until the Supreme Court rules--would be irremediable if <u>Boumediene</u> is reversed.

Accordingly, it is hereby

**ORDERED** that Petitioner's Motion for Preliminary Injunction Pursuant to FRCP 56(a) is **granted**.

DATE: Oct 2, 2007

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to: Attorneys of Record via ECF**

-8-