IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ABU ABDUL RAUF ZALITA, *et al.*, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 05cv1220 (RMU) |
| GEORGE W. BUSH, *et al.*, | ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S
MOTION FOR PRELIMINARY INJUNCTION AGAINST TRANSFER**

**PRELIMINARY STATEMENT**

Petitioner is an enemy combatant currently detained by the United States Department of Defense at the United States Naval Station in Guantanamo Bay, Cuba. Respondents have notified petitioner's counsel and the Court of their intention to transfer him out of Guantanamo Bay and to repatriate him. Dkt. No. 42. Although there are no court orders that stand in the way of that transfer (and, as demonstrated below, no such orders may properly be issued), respondents have exercised their executive discretion and have not, to date, transferred petitioner. Petitioner has now moved for an injunction to prevent his transfer. The injunction should be denied.

The issues raised by the present motion already have been adjudicated against petitioner on virtually identical motions in this very case. In April 2007, petitioner sought an order enjoining respondents from transferring him to Libya. This Court denied the motion on April 19, 2007, in light of authority – which remains binding – under which the Court lacks jurisdiction over a motion to enjoin the transfer of a Guantanamo Bay detainee. Dkt. No. 51. On appeal

from that order, the Court of Appeals likewise denied petitioner's motion for an injunction prohibiting petitioner's transfer. In the same order, the Court of Appeals directed that "the case be dismissed for lack of subject matter jurisdiction." Order dated April 25, 2007 (attached as Exhibit A).[1] Although the Court of Appeals' mandate initially issued on June 27, 2007, the mandate was subsequently recalled, by order dated October 11, 2007. *See* Exhibit B. Petitioner also sought rehearing and rehearing *en banc* in connection with his appeal from this Court's denial of his injunction motion. The rehearing petitions are still pending.

The question of the Court's jurisdiction to consider a motion to enjoin a Guantanamo Bay detainee's transfer has also been raised by petitioner in the Supreme Court in more than one context. On May 1, 2007, the Supreme Court denied petitioner's application for an original writ of injunction seeking to enjoin his transfer. *See* Exhibit C. And then on September 21, 2007, petitioner filed a petition for certiorari seeking review of the orders of this Court and of the Court of Appeals denying his requests for injunctive relief. That petition remains pending.

Having lost at every level of the federal judicial system, petitioner is now relitigating the exact question raised in his earlier unsuccessful motions to enjoin transfer. Those motions should be denied once again, not only for the reasons that supported the original denial but also because petitioner has no right to reargue the motions.

---

[1] Presumably, "the case" which the Court of Appeals directed to be dismissed was the appeal from this Court's order.

**ARGUMENT**

I.    **THIS COURT LACKS JURISDICTION OVER THE PRESENT MOTION**

    A.    **The Court of Appeals is Seized of Jurisdiction Over the Issues that Petitioner Seeks to Raise on the Present Motion**

Under fundamental principles of federal practice, "a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Under the rule articulated in *Griggs*, "[t]he district court does not regain jurisdiction over those issues until the court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997).

In this matter, petitioner sought an injunction prohibiting respondents from transferring petitioner from Guantanamo Bay to another country. On April 19, 2007, this Court refused to grant the injunction, holding that it was without jurisdiction to issue such an order by virtue of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 7, 120 Stat. 2600 (2006), as considered and applied in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007) (upholding constitutionality of MCA's provision under which district court lacks jurisdiction over cases brought by alien enemy combatant detainees relating to their detention, and applying provision to habeas cases brought by Guantanamo Bay detainees). Petitioner filed a notice of appeal from this Court's April 19 order. *See* Dkt. No. 52. As explained in *Griggs* and *DeFries*, that act removed jurisdiction over the transfer issue from

3

this Court and lodged it in the Court of Appeals.

Jurisdiction over the transfer issue, if it ever properly resided here, has not come back to this Court. Indeed, although the Court of Appeals initially issued its mandate upon its denial of petitioner's request in that court for an injunction against transfer, that mandate was later recalled on petitioner's own motion. Therefore, as a procedural matter jurisdiction over this issue does not reside in this Court. For that reason alone, the present motion should be denied.[2]

> B.    The Doctrines of "Law of the Case" and "Law of the Circuit" Preclude Relitigation of Petitioner's Request For an Injunction

Even if this Court was seized of authority to consider petitioner's present motion, the Court could not deviate from the conclusion reached on petitioner's earlier injunction motions. The Court of Appeals for this Circuit has described two settled doctrines which govern the precedential effect of judicial decisions in terms particularly relevant to the present case:

> Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that "'we must act alike in all cases of like nature.'" Two time-honored doctrines help put that principle into practice. The first is the law-of-the-case doctrine: the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*. The second is the law-of-the-circuit doctrine: the *same issue* presented in a *later case* in the *same court* should lead to the *same result*. Both doctrines play a role in this case.

*LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir.1996) (en banc) (emphasis in original, footnotes omitted).

---

[2] Of course, if the mandate had not been recalled, this Court nonetheless would not be empowered to grant the requested injunction. The Court of Appeals has held that the jurisdictional decision in *Boumediene* prohibits such an order, and "[u]nder the mandate rule, 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.' *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948)." *Independent Petroleum Ass'n of America v. Babbitt*, 235 F.3d 588, 596-97 (D.C. Cir. 2001).

"As most commonly defined, the ['law of the case'] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). This is true whether the legal issue in question was decided explicitly or merely by "necessary implication." *PNC Financial Services Group, Inc. v. C.I.R.*, --- F.3d ---, 2007 WL 2403550, * 6 (D.C. Cir. 2007) (internal quotation marks and citations omitted). The law as announced and applied in this case in both this Court and the Court of Appeals is that an injunction prohibiting the transfer of petitioner from Guantanamo Bay to another country is outside the Court's jurisdiction. The Supreme Court, as well, denied petitioner's request for a writ of injunction. Because petitioner's present motion seeks an injunction directly at odds with these various decisions, the motion must be denied on the basis of "law of the case."[3]

While this doctrine is subject to exception in the presence of extraordinary circumstances, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988), no such exception can help petitioner here, for at least two reasons. First, petitioner has not shown – and could not show – the existence of any extraordinary circumstances that could support a decision by this Court to ignore the consistency in judicial decision-making demanded by the rules discussed in *LaShawn A. v. Barry*, *PNC Financial Services* and related caselaw. Second, the question here is not only whether one court should follow its own self-created precedent. In the

---

[3] To be sure, petitioner has filed a petition for certiorari in connection with this Court's and the Court of Appeals' decisions in this regard. That fact, however, does not entitle petitioner to relief here. If it did then any party who is dissatisfied with an order entered by a district court and affirmed on appeal could seek further "review" of the appellate ruling in both the Supreme Court and the district court simultaneously. The point of the "law of the case" rule is to avoid the illogic and inconsistency inherent in such an approach to litigation.

present situation, petitioner is asking a district court to reject the holding of the Court of Appeals in this very matter that petitioner's request for an injunction to prevent a transfer falls outside the jurisdiction of the federal courts. And the determination made by the Court of Appeals in this matter was itself required by the Court of Appeals' decision in *Boumediene*. *Boumediene*, after all, was specifically cited by the D.C. Circuit in its order in this matter rejecting petitioner's injunction motion for lack of jurisdiction. Thus, petitioner's new motion runs afoul not only of the "law of the case" rule, but also of the other doctrine defining the effect of judicial precedent described in *LaShawn A. v. Barry*: "law of the circuit."

       Under the precedential imperative known as "law of the circuit," this Court has no choice but to follow the lead of the Court of Appeals in both *Boumediene* and this matter. *See Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court"); *Chambers v. United States*, 22 F.3d 939, 942 n.3 (9th Cir. 1994) ("In this circuit, once a published opinion is filed, it becomes the law of the circuit until withdrawn or reversed by the Supreme Court or an *en banc* court."), *vacated on other grounds*, 47 F.3d 1015 (9th Cir. 1995). That the Supreme Court has granted certiorari in *Boumediene* has no effect on the binding nature of the D.C. Circuit's decision. *See Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 154 (D.C. Cir. 1990) (Henderson, J., concurring). "Unless and until [a decision of the Court of Appeals] is reversed or overruled by the United States Supreme Court or by [the Court of Appeals] *en banc*, it remains the law of this circuit and no amount of hardship the appellees may suffer as a consequence can confer jurisdiction on the district court." *Id.* "Nor is it relevant that another circuit has ruled differently on the jurisdictional question or that the United States Supreme Court has granted certiorari on

the question." *Id*.

Likewise, while the D.C. Circuit has withdrawn its mandate in *Boumediene*, that fact does nothing to change this Court's obligation to follow the law of this Circuit.[4] As Judge Henderson pointed out in *Ayuda*, "stay of the mandate merely delayed return to the district court of jurisdiction over the [claims at issue] and the exercise of its duty to dismiss them; it did not affect the district court's duty – or ours – to apply the law set forth in [the appellate opinion] to parties not involved in the appeal." *Id.* Judge Henderson likewise noted that the Supreme Court's decision to consider the question addressed by the Court of Appeals does not diminish a district court's obligation to apply the law as enunciated by the Court of Appeals until such time – if ever – that the Supreme Court issues a contrary ruling. In other words, once an appellate opinion is issued, "it becomes the law of the circuit" regardless of whether the mandate has been issued, and regardless of the Supreme Court's announced intention to consider the issues raised by the opinion. *Id. See also Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (holding that district court was bound by principle of *stare decisis* to abide by a Court of Appeals decision even in absence of effective mandate).

Making that point absolutely clear, on more than one occasion since the Supreme Court granted certiorari in *Boumediene* the Court of Appeals itself has relied on *Boumediene* in denying motions by detainees who brought cases governed by the MCA. *See Hamlily v. Gates*, No. 07-1127 (D.C. Cir. July 16, 2007) (attached as Exhibit D); *Belbacha v. Bush*, No. 07-5258

---

[4] And, as noted above, the fact that the D.C. Circuit has withdrawn its mandate in this particular matter means that this Court has no jurisdiction to enter petitioner's requested injunction.

7

(D.C. Cir. Aug. 2, 2007) (attached as Exhibit E).[5]  The *Hamlily* ruling cites the jurisdictional provisions of the MCA.  In *Belbacha*, which was decided after the D.C. Circuit recalled its mandate in *Boumediene*, the Court of Appeals expressly relied on *Boumediene* and *Maxwell v. Snow* in refusing to deviate from circuit precedent.  And in *Belbacha*, the Supreme Court likewise denied a motion for emergency relief.  *Belbacha v. Bush*, No. 07A98 (U.S. Aug. 10, 2007) (attached as Exhibit F).

In short, in light of the MCA, the Court of Appeals' decision in *Boumediene*, this Court's prior decision on the very issue raised here again now, the Court of Appeals' decision on that issue in this matter, and the Supreme Court's rejection of petitioner's request for an injunction, this Court should deny the present motion .

### C.     The All Writs Act Does Not Provide a Basis for the Relief Sought Here

Petitioner's motion papers ignore virtually all of the obvious jurisdictional and precedential infirmities inherent in his motion.  While he does cite the All Writs Act, 28 U.S.C. § 1651(a), in an apparent effort to find some authority in that statute for his motion, that statute does not operate to empower this Court to grant the requested relief.  For one thing, it should be noted that petitioner cited the All Writs Act earlier in this litigation when attempting to enjoin his transfer.  *See* Emergency Motion for Injunctive Relief, filed in Court of Appeals (first page attached as Exhibit G).  The D.C. Circuit denied petitioner's motion "for lack of subject matter jurisdiction."  *See* Exhibit A.  Therefore, the Court of Appeals already has rejected the notion that, notwithstanding *Boumediene*, the All Writs Act provides this Court with jurisdiction to

---

[5]  The *Belbacha* decision is currently being briefed on its merits in the Court of Appeals.

grant a no-transfer injunction, at least by "necessary implication." *See PNC Financial Services Group, Inc. v. C.I.R.*, 2007 WL 2403550 at * 6. Consequently, the various doctrines relating to the binding nature of judicial precedent discussed above preclude consideration of petitioner's contentions with regard to the All Writs Act. Further, the terms of the statute do not support the proposition that the Court is authorized to grant an injunction in these circumstances. The All Writs Act provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." That statute "'confines [a court's] authority to the issuance of process 'in aid of' the issuing court's jurisdiction" and "does not enlarge that jurisdiction.'" *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999)). As discussed above, *Boumediene* defines the current limits of this Court's jurisdiction. Whatever the Supreme Court might in the future decide in *Boumediene,* the Court of Appeals has made clear in that case – and in this one – that this Court currently lacks jurisdiction to take the action that petitioner seeks.

Petitioner cites an opinion issued in *Alhami v. Bush*, 05cv359 (D.D.C. Oct. 2, 2007), in which Judge Kessler relied on the All Writs Act to grant relief similar to that which petitioner seeks here. *Alhami*, though, cannot help petitioner in this case. First, unlike in that matter, petitioner here divested this Court of jurisdiction to consider his present motion when he filed a notice of appeal from the order denying the same relief that he now seeks. Second, in contrast to *Alhami*, this matter involves the prior rejection – by this Court, the Court of Appeals, and the Supreme Court – of the very relief that petitioner seeks,. Considerations of "law of the case" not present in *Alhami* apply to this case, while the doctrine of "law of the circuit" operates here even more powerfully than in that case.

Additionally, respondents respectfully submit that Judge Kessler's invocation of the All Writs Act was erroneous. Judge Kessler opined that the statute gave her jurisdiction to preserve her jurisdiction. But she had no jurisdiction to preserve, given the terms of the MCA and the decision in *Boumediene*. She also said that *Boumediene* lacks finality given that the Court of Appeals withdrew its mandate in that case. But the withdrawal of the mandate merely means that the Court of Appeals has not finally directed the district court to implement the legal ruling issued in *Boumediene* in the cases involved in that appeal. *See* 1998 Advisory Committee Note to F.R.A.P. 41(c) (upon issuance of mandate "the parties' obligations become fixed"). It does not undermine the finality of *Boumediene* as binding precedent in this Circuit on the question of law decided in that opinion. *See Ayuda*, 919 F.2d at 154 (Henderson, J., concurring).

For these reasons, the All Writs Act does not provide a basis for the order petitioner seeks.

## II. PETITIONER'S MOTION WOULD HAVE TO BE DENIED ON ITS MERITS EVEN IF THE COURT HAD JURISDICTION TO GRANT IT

Even if the Court were to move beyond the jurisdictional and precedential impediments to granting the relief that petitioner seeks, petitioner's motion would have to be denied. It is well-established that a request for preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail on a request for a preliminary injunction, a movant "must 'demonstrate 1) a substantial likelihood of success on the merits, 2) that [he] would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially

injure other interested parties, and 4) that the public interest would be furthered by the injunction.'" *See Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). The irreparable harm that must be shown to justify a preliminary injunction "must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). As previously discussed in the papers filed in opposition to petitioner's earlier requests for an injunction here and in the Court of Appeals, petitioner's motion fails to make the showing required to justify the grant of extraordinary injunctive relief.

***Petitioner Has No Likelihood of Success On the Merits.*** Petitioner has no likelihood of success on the merits because, as discussed above, this Court lacks jurisdiction to grant the motion, and is bound to apply appellate decisions issued in this case and others that preclude the sort of order that petitioner seeks.

Further, petitioner has no legal authority on which he can rely as a source of substantive rights for the redress he seeks here. The Court of Appeals held in *Boumediene* that aliens detained at Guantanamo do not have constitutional rights. *See* 476 F.3d at 988-94. To the extent petitioner might want to base his motion on the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment ("CAT") or the United Nations Convention Relating to the Status of Refugees ("Refugee Convention"),[6] moreover, he could not do so. Neither the CAT nor the Refugee Convention gives rise to judicially enforceable rights. *See*, *e.g.*, *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003) (Refugee Convention); 8 U.S.C. §

---

[6] Petitioner's motion refers to treaty rights that he believes he has which he says he mentions in his pending petition for certiorari. The treaties to which he refers in this regard appear to be the CAT and the Refugee Convention.

1252(a)(4) (CAT claims are not cognizable in a habeas petition); *see also Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 194 (D.D.C. 2005) (Bates, J.) (rejecting petitioner's argument that the Foreign Affairs Reform and Restructuring Act of 1998, which implemented CAT in certain immigration-specific contexts, could serve as a legal basis for prohibiting or limiting transfer of wartime detainees to other countries).

Further, even if some valid legal basis existed for petitioner's request for an injunction, separation of powers concerns would bar such relief. "[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch." *People's Mojahedin Org. v. Dep't of State*, 182 F.3d 17, 23 (D.C. Cir. 1999) (citing *Chicago & S. Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103 (1948)); *see also Holmes v. Laird*, 459 F.2d 1211, 1215 (D.C. Cir. 1972) ("In situations such as this, '[t]he controlling considerations are the interacting interests of the United States and of foreign countries, and in assessing them [the courts] must move with the circumspection appropriate when [a court] is adjudicating issues inevitably entangled in the conduct of our international relations.'") (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 383 (1959)).[7] *Cf., e.g.*, *Matter of Requested Extradition of Smyth*, 61 F.3d 711, 714 (9th Cir. 1995) (discussing "rule of noninquiry" which has to do with "the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of

---

[7] In *Holmes,* U.S. citizen-servicemembers sued to prevent the United States government from surrendering them to West German authorities to serve sentences for convictions by West German courts on criminal charges relating to their conduct while stationed in West Germany. Even in this situation involving U.S. *citizens,* the District Court and D.C. Circuit rejected the plaintiffs' invitation to examine the fairness of their treatment by the West German courts and declined to enjoin the transfer, the latter court holding that "the contemplated surrender of appellants to the Federal Republic of Germany is a matter beyond the purview of this court." 459 F.2d at 1225.

powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems").

If the Court were to entertain petitioner's claim to a right to contest repatriation or removal from Guantanamo, it would insert itself into the most sensitive of diplomatic matters. Judicial review of a transfer or repatriation decision would involve scrutiny or second-guessing of United States officials' judgments and assessments on the likelihood of torture in a foreign country, including judgments regarding the state of diplomatic relations with a foreign government, the reliability of information concerning and representations from a foreign government, the adequacy of assurances provided and a foreign government's capability to fulfill them. Declaration of Clint Williamson (attached as Exhibit H) ¶¶ 8-12. Second-guessing in such matters by the courts or others could chill important sources of information and interfere with or undermine our ability to interact effectively with foreign governments, including our ability to obtain cooperation of other nations in the war on terrorism. *See* Williamson Decl. ¶¶ 8-12; Declaration of Joseph Benkert (attached as Exhibit I) ¶ 8.[8] Such second-guessing would be at odds with the public interest in having the United States government speak on matters of foreign policy in a unified fashion through the branch to which such speech is textually committed by the Constitution. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381

---

[8] It is certainly beyond argument that the courts of the United States would have no authority to interfere with any decision of a foreign sovereign nation such as Libya regarding detention or prosecution of its own national being returned to it pursuant to its own laws. *See Worldwide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1164-65 (D.C. Cir. 2002) ("The act of state doctrine precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory.") (internal quotation marks and citation omitted).

(2000).

There is simply no basis in law for an injunction barring the repatriation of an alien enemy combatant, such as petitioner, during wartime. Thus, petitioner has no likelihood of success to support his request for an injunction against transfer, and his motion should be denied.

***Petitioner has not Demonstrated Irreparable Injury.*** Petitioner also has not carried his burden to show irreparable injury that is "certain and great . . . actual and not theoretical," *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), by the assertion that, contrary to the policies and processes attested to in the sworn declarations of high-level Executive Branch officials, the United States has designs to repatriate petitioner under circumstances where he might be tortured. *See Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 198-99 (D.D.C. 2005) (lack of evidence from petitioners as to likelihood of mistreatment upon transfer, balanced against declarations of hihg-level government officials about process followed before transfer, to consider post-transfer treatment concerns, results in finding of no irreparable injury to warrant preliminary injunction on motion of Guantanamo Bay detainee). Those declarations, after all, make clear that it is the policy of the United States not to repatriate or transfer a detainee to a country when the United States believes, based on a number of factors and considerations, it is more likely than not that the individual will be tortured there. Williamson and Benkert Decls., *passim*. To implement this policy, the Executive Branch employs an elaborate inter-agency process for evaluating the propriety of transfers of Guantanamo detainees that involves senior level officials and includes consideration of the detainee's particular circumstances, an informed and well-rounded analysis of the current situation on the ground in the prospective transferee country, the input of various State Department offices with relevant knowledge, personal

interactions and negotiations with senior officials of the prospective transferee government, and consideration of assurances provided by the prospective transferee country, as well as their sufficiency and any mechanisms for verifying them.  *Id*.  Further, as described in those declarations, a transfer will not take place where concerns about the treatment of a detainee after transfer cannot be satisfactorily resolved.  *Id*.  To conclude that an injunction barring the intended transfer of petitioner is nevertheless necessary would require the Court to conclude that the United States' policies and practices are somehow a sham or pretext.  There is no valid basis for such an assumption.  *Cf. Almurbati v. Bush*, 366 F. Supp. 2d 72, 78 (D.D.C. 2005) (Walton, J.) (holding that respondents' sworn declarations "directly refute the petitioners' allegations of their potential torture, mistreatment and indefinite detention to which the United States will in some way be complicit").

Accordingly, petitioner has failed to demonstrate irreparable harm justifying an injunction barring petitioner's repatriation.

***The Balance of Harms Warrants Denial of the Injunction.***  Nor is it the case that respondents would not be harmed by an injunction barring petitioner's repatriation.  In fact consideration of the equities and the harm that would flow from such an injunction warrant that petitioner's motion be denied.

Petitioner's requested injunction entails serious and unprecedented harms that compel that it be denied.  As explained *supra*, second-guessing of the determination to repatriate petitioner would involve Court intervention into sensitive diplomatic matters and would interfere with or undermine the government's ability to conduct foreign affairs, interact effectively with foreign governments, and obtain cooperation of other nations in the war on terrorism.

*See* Williamson Decl. ¶¶ 8-10, 12; Benkert Decl. ¶ 8. *See also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 (2000) (expressing disapproval of acts that "compromise the very capacity of the President to speak for the nation with one voice in dealing with other governments"). Thus, judicial intervention to bar petitioner's repatriation would violate the principle of separation of powers. Constitutional and public interests favor allowing the Executive Branch, which is constitutionally vested with the authority both to conduct military functions such as detention of enemy combatants for the duration of hostilities[9] and to engage in foreign relations, to act without undue intrusion within its constitutional sphere of responsibility. As one Judge of this Court has held:

> [T]here is a strong public interest against the judiciary needlessly intruding upon the foreign policy and war powers of the Executive on a deficient factual record. Where the conduct of the Executive conforms to law, there is simply no benefit – and quite a bit of detriment – to the public interest from the Court nonetheless assuming for itself the role of a guardian ad litem for the disposition of these detainees. *See People's Mojahedin Org.*, 182 F.3d at 23 ("[I]t is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch.").

*Al-Anazi,* 370 F. Supp. 2d at 199.

Here, petitioner asks this Court to take the step of barring the repatriation of an alien enemy combatant held outside the United States during wartime. Separation of powers and other public interests warrant the rejection of petitioner's request. *See Hamdi* v. Rumsfeld, 542 U.S. 507, 531 (2004) ("Without doubt, our Constitution recognizes that core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them.").

---

[9] *See Hamdi*, 542 U.S. at 518-19.

For these various reasons, even if the Court had jurisdiction to consider petitioner's motion, the only available conclusion on the merits of the motion would be that petitioner has failed to carry his significant burden.

## CONCLUSION

For the reasons discussed above, petitioner's motion should be denied.

Dated: November 7, 2007                    Respectfully submitted,

 

                                                PETER D. KEISLER
                                                Assistant Attorney General

                                                DOUGLAS N. LETTER
                                                Terrorism Litigation Counsel

                                                  /s/  *Judry L. Subar*
                                                JOSEPH H. HUNT (D.C. Bar No. 431134)
                                                VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                JUDRY L. SUBAR (D.C. Bar No. 347518)
                                                JEAN LIN
                                                ANDREW WARDEN
                                                Attorneys
                                                United States Department of Justice
                                                Civil Division, Federal Programs Branch
                                                20 Massachusetts Ave., N.W.
                                                Washington, DC  20530
                                                Tel:  (202) 514-3969

                                                Attorneys for Respondents