UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

FILED WITH
COURT SECURITY OFFICER
2/1/08
DATE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
)
ABU ABDUL RAUF ZALITA, )
)
Petitioner, )
)
v. ) No. 1:05 CV 1220 (RMU)
)
GEORGE W. BUSH et al., )
)
Respondents. )
)
)

## PETITIONER'S REPLY IN SUPPORT OF MOTION FOR INQUIRY CONCERNING DESTRUCTION OF EVIDENCE

Petitioner Abu Abdul Rauf Zalita, a.k.a., Abdul Ra'ouf Omar Mohammed Abu Al Qassim, ("Petitioner") or ("Qassim"), by and through his undersigned counsel, respectfully submits this memorandum of law in further support of his motion for a judicial inquiry concerning the government's destruction of evidence.

I. **The Court Should Inquire into the Government's Destruction of Evidence Introduced by Respondents as Justification for Petitioner's Imprisonment**

In his motion for an inquiry into the government's destruction of evidence, Petitioner argues that the government has destroyed evidence related to his Combatant Status Review Tribunal (CSRT). Specifically, the government has destroyed videotapes of the interrogations of Abu Zubaydah and at least one other CIA detainee. Public information concerning Abu Zubaydah's interrogations indicate that U.S. personnel used torture and other impermissible coercion, including the threat of torture, to extract information from him. According to the government's Classified Factual Return, █████████████████

UNCLASSIFIED

1

UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

███████████████████████████████████ *See* Mot. for Inquiry at 2-3. Petitioner's CSRT was finalized on January 23, 2005. In compliance with this Court's Order of July 29, 2005 (minute order), Respondents submitted a Classified Factual Return on September 14, 2005 and ███████████████████████████████ ███████████████████████ in their filing. *See* Resp. Factual Return to Petition for Writ of Habeas Corpus, filed on Sept. 14, 2005, Encl. (2) at 1; Ex. R-17 (dkt. no. 4). Over nine months after the CSRT relied upon statements ████████████████████████████████ and nearly two months after Respondents submitted the Classified Factual Return to this Court, the government proceeded deliberately to destroy the videotapes of Abu Zubaydah's interrogations as well as additional videotapes of another unidentified CIA detainee.

Respondents do not dispute that they were under "evidence preservation obligations arising in this case," Opp'n at 1-2, and that the government destroyed evidence relevant to Petitioner's challenge to his detention. Nor do Respondents dispute that the destruction of this evidence has substantially impaired the Court's ability to determine whether he is unlawfully detained as an "enemy combatant" and whether the government relies upon torture evidence to justify his detention. Respondents instead argue that the Court should further delay any judicial inquiry into the destruction of evidence about Petitioner while the Executive conducts a criminal investigation into Executive agency personnel's potential illegal conduct.

Respondents essentially argue that, despite years of Executive defiance of judicial orders and the loss, destruction and suppression of evidence it was required to preserve or produce, the Court should now entrust the Executive with investigating the CIA's illegal conduct and with unilaterally determining the remedy for its destruction of evidence. According to the Respondents, judicial oversight of evidence destruction in this case would be an "extraordinary

UNCLASSIFIED

2

UNCLASSIFIED

TOP SECRET/CODEWORD
pending classification review

step."[1]  Respondents' arguments should be rejected.  Judicial oversight in this matter is both essential and fully justified.

As an initial matter, in *Abdullah v. Bush*, No. 05-cv-23 (D.D.C.) (RWR), the petitioner also moved to compel the government to report on its compliance with an existing preservation order and "made a colorable showing that information obtained from Abu Zubaydah during 2002 likely included information regarding petitioner." *See* Jan. 24, 2008 Memorandum Order at 1, *Abdulladh v. Bush*, No. 05-cv-23 (D.D.C.) (RWR) (dkt. no. 83) ("Jan. 24, 2008 Memorandum Order") (attached hereto as Exhibit A).  Respondents made nearly identical arguments in opposition to the *Abdullah* petitioners' motion as they rely upon in the present case. *See* Opp'n to Mot. to Compel Compliance With The Court's Preservation Order of July 18, 2005, *Abdullah v. Bush*, No. 05-cv-23 (D.D.C.) (RWR), filed on Dec. 26, 2007 (dkt. no 79).  In *Abdullah*, the government also did not "dispute or otherwise respond directly to petitioner's allegations that they knowingly destroyed evidence pertaining to this petitioner." Jan. 24, 2008 Memorandum Order at 2. Accordingly, Judge Roberts ordered the government to file a report detailing its efforts to comply with the Court's preservation order as well as "the nature of any evidence potentially subject to the protective order that has been destroyed or otherwise spoliated."[2] *Id.*

---

[1] Respondents suggest that *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), somehow precludes judicial inquiry into the deliberate destruction of evidence because the *Hamdi* plurality noted the need to balance national security concerns with the necessity to protect fundamental due process when adjudicating challenges by U.S. citizens to their imprisonment as "enemy combatants." Opp'n at 2 n.2. *Cf. Rasul v. Bush*, 542 U.S. (2004) (noting that noncitizens "no less than American citizens" are entitled to challenge their detention as enemy combatants).

The plurality's opinion in *Hamdi*, however, is irrelevant to the issue of Respondents' violation of their obligation to preserve evidence and this Court's authority to inquire into and remedy the deliberate destruction of evidence.  Nothing in *Hamdi* absolves Respondents from complying with their obligation to preserve evidence related to their filings before the Court.

[2] The Jan. 24, 2008 Memorandum Order in *Abdullah* is the only ruling to date from a court considering specific evidence that the destroyed videotapes included information regarding the

UNCLASSIFIED

3

UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

For the reasons ordered by Judge Roberts, this Court should require Respondents to submit to the Court and Petitioner information concerning the scope of the destruction of evidence and nature of the evidence destroyed. Although no preservation order was issued specifically in this case,[3] unlike in *Abdullah*, Petitioner's evidence here that the government

---

petitioner. In *Abdah v. Bush*, No. 04-cv-1254 (D.D.C.) (HHK) (dkt. no. 230), the Petitioners did not present specific evidence linking the government's justification of their detention to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Petitioners' motions are still pending in *Said v. Bush*, 05-cv-2384 (D.D.C.) (RWR) (dkt. no. 79), *Al-Marri v. Bush*, 04-cv-2035 (D.D.C.) (GK) (dkt. no. 76) and *Alhami v. Bush*, 05-cv-0359 (D.D.C.) (GK) (dkt. no. 67). The fact that similar motions are before other judges means only that some consultation may be appropriate, but certainly does not indicate that this Court should either defer to those judges or, as respondents evidently prefer, do nothing.

Moreover, while Petitioner has moved for an inquiry in the destruction of evidence in the Court of Appeals in his pending Detainee Treatment Act (DTA) case, the scope of review, legal claims and information at issue in his habeas petition and DTA case are distinct and may, again, warrant consultation but not deferral, of judicial action. Respondents' reliance upon *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984), is misplaced. The Supreme Court has yet to issue its decision in *Boumediene* and, in any event, this Court's inquiry into the impermissible destruction of evidence will not interfere with the jurisdiction of the Court of Appeals in a DTA case. To the contrary, Petitioner's habeas petition challenges his unlawful detention and his DTA case appeals the final determination of the CSRT. The government's destruction of evidence is relevant in each of the separate proceedings.

[3] Petitioner notes, however, that the initial preservation orders issued in a number of Guantánamo cases required Respondents to preserve all records related to the interrogations and mistreatment of detainees at Guantanamo. *See, e.g.*, July 18, 2005 Mem. Op. and Order at 6-7, *Abdullah v. Bush*, No. 05-cv-23 (D.D.C.) (RWR) (dkt. no. 36) ("[S]ince the very preservation order sought by petitioners for all materials regarding treatment of all Guantanamo Bay detainees has already been issued against the same respondents in *Al-Marri v. Bush*, Civ. No. 04-2035 (D.D.C. Mar. 7, 2005) (Order), and *Abdah v. Bush*, Civ. No. 04-1254 (D.D.C. June 10, 2005) (Order), respondents here are already under a duty to preserve those records and another preservation order would be unnecessary.").

Consequently, in after-filed cases, new petitioners, such as Petitioner Qassim, saw no need for duplicate preservation orders. Indeed, Respondents' own understanding of the previous preservation orders indicates that they knew or should have known that evidence of Abu Zubaydah's interrogations was subject to the existing preservation orders. *Compare* Mot. for Inquiry, Exhibit F (Memorandum for Secretary of Defense, *et al.*, from Daniel J. Dell'Orto, Acting General Counsel, Department of Defense (Dec. 19, 2007), at 1 ("In August 2005, in response to several orders issued by federal court judges, the General Counsel of the Department



4

UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

relied upon 

[4] As in *Abdullah*, Respondents do not dispute that this evidence was deliberately destroyed.

Furthermore, Respondents' reliance upon the Department of Justice's criminal investigation into obstruction of justice is misplaced. The origin of the investigation itself is instructive concerning the need for further inquiry into the destruction of evidence in this case. The investigation was initiated after the Department of Justice filed two perjured declarations in the *Moussaoui* appeal and trial, resulting in the obstruction of justice. The Department of Justice learned of the "error" and notified the court some two years later, sparking the present controversy and eventual criminal investigation. The investigation, however, is not a substitute for the inquiry Petitioner seeks in this case. The criminal investigation will likely focus upon the *mens rea* of those who authorized and conducted the destruction of the interrogation tapes and whether the destruction constituted the intentional obstruction of justice. These are not the issues before the Court. Petitioner seeks an inquiry concerning different and narrower questions,

---

of Defense directed that certain information relating to all detainees ever held by the Department of Defense at Guantanamo Bay be preserved and maintained," including any record "'that is in, or comes into, your possession or control'"), *with id.* Exhibit C (Declaration of Gitanjali S. Gutierrez), at ¶ 3

[4] *See also Abdah v. Bush*, 04-cv-1254 (HHK), Hr'g Tr. at 24:4-6 (Respondents stating that "We are not arguing that the court lacks jurisdiction to inquire into compliance with the court's own order entered by the court in this case."). Similarly, Respondents cannot object to judicial oversight to remedy the destruction of evidence related to their own court filings in this matter while the jurisdictional dispute in *Boumediene v. Bush* is pending.

UNCLASSIFIED

UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

including for example, the following issues: What is the relationship between the destroyed tapes and the  introduced by Respondents in the Classified Factual Return? What information was on the destroyed tapes and do any other records memorialize the videotapes? Did Respondents destroy additional records related to Petitioner?

Moreover, if the Court's inquiry uncovers further violations of the Respondents' obligation to preserve evidence, the remedies may be distinct from criminal indictments, if any, arising out of the Department's criminal investigation. Here, for example, the Court may remedy the destruction of evidence by drawing the appropriate evidentiary sanctions. No need exists to inquire into the *mens rea* of the individuals involved; the Court's inquiry will focus upon the scope of document destruction and the nature of the destroyed evidence. Finally, a heightened need for judicial inquiry is created when, as here, the potential improper conduct involves Executive agency personnel and a history of Executive agency defiance of court orders in the Guantanamo detainee litigation. Petitioner's demand for independent judicial inquiry into the narrow facts of evidence destruction in his case is justified and necessary.

II. **Respondents' Representations Should be Made by Individuals with Direct Knowledge of the Scope of Evidence Destruction and the Nature of the Destroyed Evidence**

Petitioner argued that Respondents must demonstrate the preservation and destruction of evidence in the case through verified representations to the Court by individuals with direct knowledge of the relevant information. Respondents oppose Petitioner's demands on the grounds that it may "complicate" the criminal investigation into the matter. In recent cases, however, lawyers from the Department of Justice have been misinformed by the CIA, or the CIA has withheld information from the Department of Justice, concerning information in pending litigation. As Petitioner set forth in his motion, Mot. for Inquiry at 8-10 (dkt. no. 81), the highly

UNCLASSIFIED

6

UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

compartmentalized nature of the CIA interrogation program at issue here and the necessity for accurate representations to the Court require representations by individuals with direct knowledge. It also requires affording Petitioner an opportunity to test the government's representations regarding the scope of its inquiry and the conclusions the government draws from its inquiry in order not to repeat the mistakes in the *Moussaoui* trial and appeal.

Furthermore, Respondents can no longer seriously contend that the government is entitled to a presumption of regularity when it comes to the destruction of interrogation records related to Guantanamo or other "enemy combatant" detainees. In June 2005, for example, in opposing a preservation order, Respondents argued before Judge Roberts that no preservation order was necessary because the government was currently investigating detainee abuse by U.S. personnel and "Respondents would not compromise those investigations or prosecutions by destroying or sanctioning the destruction of documents pertinent to such investigations." Opp'n to Petitioners' Motion for Preservation Order at 4-5, *Abdullah v. Bush*, No. 05-cv-23 (D.D.C.) (RWR), filed on June 7, 2005 (dkt. no. 32). ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

▊▊▊▊ and unquestionably was subject to treatment that constituted torture prior to 2005, five months after assuring the court that Respondents would never compromise a pending investigation or prosecution, the government deliberately destroyed videotapes of Abu Zubaydah's interrogations. Indeed, in a recent hearing for a contempt motion against the CIA in a related Freedom of Information Act case seeking records about detainee abuse, Judge Hellerstein explicitly noted that the CIA appears to have intentionally withheld documents from the Office of Inspector General in order to evade its obligation to produce records pursuant to orders of that court. *See ACLU v. Department of Defense, et al.*, 04-cv-4151 (S.D.N.Y.) (AKH), Hr'g Tr. at 43:8-9 (Judge Hellerstein stating that the CIA withholding of records and file markers

UNCLASSIFIED

7



from the Office of Inspector General files "makes a sham out of this whole case"); *id.* at 43:25 to 44:1-3 ("If your client was aware that that representation to me masked information that was important to the OIG, it was not put in the OIG file, I hesitate to state the inference I would take from that."); *id.* at 44:5-6 (Judge Hellerstein stating that "It seems to me that you were gulled and the Court was gulled"). The CIA's conduct in the FOIA litigation is but the latest defiance of judicial oversight by the Executive since the Supreme Court's decision in *Rasul*.

\* \* \*

Petitioner has been cleared for transfer since December 2006 and has been resisting Respondents' efforts to render him to the custody of the Qadhafi regime where he faces certain torture, persecution and harm.[5] The stigma of Respondents' "enemy combatant" designation of Petitioner and his imprisonment at Guantanamo have substantially impeded his ability to seek repatriation in a safe third country. That Respondents have now destroyed records of interrogations of Abu Zubaydah ███████████████████████████████ must be addressed by this Court promptly. As Petitioner remains imprisoned, this Court cannot countenance any further delay in determining the extent and the impact of the government's destruction of evidence upon Petitioner's ability to vindicate his interest in having a fair hearing of his challenge to his detention.

---

[5] The only two Libyan citizens transferred from Guantanamo to Libya in 2006 and 2007 remain imprisoned by the Qadhafi regime without charge, trial or access to counsel. *See* Human Rights Watch, *Libya: Rights at Risk*, (2008), *available at* http://hrw.org/english/docs/2008/01/03/libya17674.htm.



UNCLASSIFIED

~~TOP SECRET/CODEWORD~~
~~pending classification review~~

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in his prior papers, Petitioner Qassim's motion should be granted.

Respectfully submitted,

Gitanjali S. Gutierrez (DC Bar No. 51177)
J. Wells Dixon (DC Bar No. 51138)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6485
Fax: (212) 614-6499

*Counsel for Petitioner*

UNCLASSIFIED

# EXHIBIT A

UNCLASSIFIED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HANI SALEH RASHID ABDULLAH )
  et al., )
 )
    Petitioners, )
 )
 v. )   Civil Action No. 05-23 (RWR)
 )
GEORGE W. BUSH et al., )
 )
    Respondents. )

MEMORANDUM ORDER

Petitioner Hani Saleh Rashid Abdullah, a foreign national detained at Guantanamo Bay in the custody of the United States, has filed a motion to compel respondents to report on their compliance with a preservation order that required respondents to "preserve and maintain all evidence, documents and information, without limitation, now or ever in respondents' possession, custody or control, regarding the individual detained petitioner[] in th[is] case[]." Mem. Order, July 18, 2005. Respondents have acknowledged that after the preservation order was entered, they destroyed video-records of interrogations of another detainee, Abu Zubaydah, dating from the year 2002. See Abdah v. Bush, Civil Action No. 04-1254 (HHK), Hr'g Tr. at 22:7-9, Dec. 21, 2007. In his motion papers, petitioner has made a colorable showing that information obtained from Abu Zubaydah during 2002 likely included information regarding petitioner, and was therefore subject to the preservation order. (See Pet'r's



-2-

Reply ¶ 1.) He also notes his own handling in detention and raises the valid questions of whether it, too, may have been videotaped and whether any such tapes have been destroyed. (See Pet'r's Mot. ¶¶ 3,4.)

Respondents oppose petitioner's motion by arguing that prudence cautions against granting the motion. They do not challenge the court's authority to enforce its own orders. See also id. at 24:4-6 ("We are not arguing that the court lacks jurisdiction to inquire into compliance with the court's own order entered by the court in this case.") They also do not dispute or otherwise respond directly to petitioner's allegations that they knowingly destroyed evidence pertaining to this petitioner that was subject to the July 18, 2005 preservation order entered in this case. Accordingly, it is hereby

ORDERED that petitioner's motion for relief be, and hereby is, GRANTED in part and DENIED in part. It is denied to the extent that it seeks in-court questioning of respondents' witness. It is granted to the extent that it seeks a substantive report from respondents. Respondents are ordered to file by February 14, 2008, a report detailing what they have done since the preservation order was entered in July 2005, and what they are now doing, to ensure compliance with the July 18, 2005 preservation order, and the nature of any evidence potentially



UNCLASSIFIED

Case 1:05-cv-00023-RWR    Document 83    Filed 01/24/2008    Page 3 of 3

-3-

subject to the protective order that has been destroyed or otherwise spoliated.

SIGNED this 24th day of January, 2008.

                              /s/  
                        RICHARD W. ROBERTS  
                        United States District Judge



UNCLASSIFIED

UNCLASSIFIED

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2008, I caused the foregoing Petitioner's Reply in Support of Motion for Inquiry Concerning Destruction of Evidence Related to CIA Detainee Interrogations, with exhibit, to be filed and served on counsel listed below by causing an original and two copies to be personally delivered to the Court Security Office:

Terry Henry, Esq.
U.S. Department of Justice
Civil Division Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530

Counsel for Respondent


Jessica Baen

UNCLASSIFIED